UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61635-Civ-MIDDLEBROOKS
    (07-60219-Cr-MIDDLEBROOKS)
MAGISTRATE JUDGE P. A. WHITE

YASMANI LAZO,                    :

        Movant,                  :          REPORT OF
                                         MAGISTRATE JUDGE
v.                               :

UNITED STATES OF AMERICA,        :

        Respondent.              :
_____

## 1. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to 28 U.S.C. section 2255, attacking his sentence for conspiracy to obstruct and moving items in commerce by robbery following a guilty plea in criminal case number 07-60219.

The Court has reviewed the motion to vacate and supporting memorandum, government's response, Lazo's reply, Presentence Investigation Report ("PSI"), and all pertinent portions of the underlying criminal file.

## 2. Claims

Construing the *pro se* movant's arguments liberally, <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), he appears to raise the following claims in his section 2255 motion, supporting memorandum and reply:

Counsel was ineffective for failing to:

1.   (a) challenge a firearm enhancement that is contrary to the plea agreement, (b) warn Lazo prior to entering his plea of the possibility of enhancement based on either his own or a co-

1

defendant's brandishing a firearm, and (c) adequately investigate and research the firearm enhancement;

2.   challenge an enhancement for brandishing a firearm where there was insufficient evidence that Lazo either brandished a firearm or foresaw that a co-defendant would brandish a firearm;

3.   (a) adequately argue the court should sentence Lazo to the low end of the guidelines under the plea agreement, (b) object to preserve the issue for appeal, and (c) warn Lazo that testifying at the sentencing hearing may result in a sentence greater than the bottom of the guidelines; and

The Court erred by:

4.   (a) sentencing Lazo to the top of the guidelines range where the plea agreement stipulated to sentencing at the bottom of the guidelines range, and (b) participating in the plea negotiations and/or execution of the plea agreement.

(Cv-DE# 1, 3).

### 3. Procedural History

The relevant procedural history of the underlying criminal case is as follows. On September 13, 2007, Lazo was charged by indictment with: Count (1), conspiracy to obstruct and moving articles in commerce by robbing a truck with a firearm (18 U.S.C. § 1951(a)); Count (2), knowing obstruction and delay of commerce by robbery with force by use of a firearm (18 U.S.C. §§ 1951(a), 2; Count (3), conspiracy to steal goods worth over $1,000 from a motor truck or trailer in interstate and foreign shipment of freight (18 U.S.C. § 659); Count (4), knowing receipt and possession of stolen

goods from a motor truck and trailer from interstate and foreign shipment worth over $1,000 (18 U.S.C. §§ 659, 2).

Lazo signed a written plea agreement in which he agreed to plead guilty to Count (1) in exchange for the government dismissing the remaining counts. (Cr-DE# 65). Lazo acknowledged the advisory guidelines would be calculated after the plea was entered, that the Court was not obligated to impose a guidelines sentence, and that he faced a statutory maximum of 20 years in prison, supervised release of up to three years, and a fine of up to $250,000. (Cr-DE# 65 at ¶ 3-4). The government reserved the right to inform the court of all facts pertinent to the sentencing process, including "all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background." (Cr-DE# 65 at ¶ 6). The government agreed to recommend a three-level reduction for cooperation, if applicable. (Cr-DE# 65 at ¶ 7). The government and Lazo agreed it was appropriate to increase the offense level for abduction and property loss of $20,000. (Cr-DE# 65 at ¶ 11).

The parties did not agree on the applicability of an enhancement for the use of a firearm. The plea agreement provides that both parties reserved the right to address the issue at the sentencing hearing:

> The United States reserves the right to argue that a firearm was brandished or possessed during the commission of the offense and the defendant reserves the right to argue that the use of a firearm during the commission of the offense was not foreseeable, thus, an upward adjustment for the firearm is not applicable.

(Cr-DE# 65 at ¶ 12).

3

The agreement acknowledges the Court would not be bound by the parties' recommendations or the guidelines and nevertheless waived his right to appeal the sentence imposed. (Cr-DE# 65 at ¶ 13-14). The written agreement constituted the entire agreement between the parties. (Cr-DE# 65 at ¶ 15).

At the November 28, 2007, plea hearing, Lazo stated he had received a copy of the plea agreement, read it, discussed it with his lawyer, and understood it. (Cr-DE# 111 at T. 4-8). The government had not made any promises to him in connection with his case, nobody had attempted to force him to plead guilty and he was pleading guilty because he was guilty. (Cr-DE# 111 at T. 9). The Government proffered a factual basis for the plea. (Cr-DE# 111 at T. 11). Specifically, the government asserted Lazo and four others planned to rob a truck of its cargo of perfume. According to the Government, Lazo was the gunman who initially entered the parked truck, took the driver and his son captive and held him at gunpoint while two other co-conspirators entered the truck and drove to a warehouse where the cargo was off-loaded. The remaining two conspirators followed in separate vehicles. The truck was dumped in a residential neighborhood and the co-conspirators fled, leaving the victim and his son unharmed.

Lazo disputed the portions of the proffer alleging he had brandished a firearm or that he ever entered the carjacked truck. (Cr-DE# 111 at T. 14). Lazo asserted he never possessed a firearm or entered the truck, that co-conspirator Roberto Perez unforeseeably brandished a weapon, and Lazo merely followed the truck in another vehicle to pick up Perez after the cargo had been unloaded. (Cr-DE# 111 at T. 15). The court accepted Lazo's guilty plea and noted Lazo's reservations. (Cr-DE# 111 at T. 17).

4

The PSI calculated the base offense level at 20, and added six levels for use of a firearm (§ 2B3.1(b)(2)(B)), four levels for abduction (§ 2B3.1(b)(4)(A)), two levels for carjacking (§ 2B3.1(b)(5)), and one level for a loss of more than $10,000 (§ 2B3.1(b)(7)(B)). (PSI at ¶¶ 34-38). Three levels were subtracted for cooperation, resulting in a total offense level of 30. (PSI at ¶¶ 44-46). Lazo's criminal history category was calculated at I. (PSI at ¶ 49). This resulted in a guidelines range of 97 to 121 months. (PSI at ¶ 77-78).

Lazo filed objections to the PSI arguing the six-point enhancement for use of a firearm was inapplicable because he never used a firearm during the robbery and that a co-defendant's use of a firearm was not foreseeable. (Cr-DE# 72). He contended cooperating co-defendant Perez was not truthful about the firearm and reserved the right to argue the issue. The Government responded that Perez was truthful about Lazo's use of a firearm during the offense. It argued that, even if Lazo did not personally brandish the weapon, it was foreseeable to all members of the conspiracy that a firearm would be involved. (Cr-DE# 74). Therefore, application of the six-point enhancement was appropriate even if Lazo did not personally brandish the firearm. The issue remained unresolved until the time of sentencing. (PSI addenda).

At the February 6, 2008, sentencing hearing, the Court permitted the parties to address the firearm issue and whether Lazo had a "minor role" in the offense. Lazo, the victim, and an FBI agent testified. (Cr-DE# 112). Lazo testified that co-conspirator Dany Fernandez called him about a week prior to the offense to ask if he would like to participate in a robbery of a truck. (Cr-DE# 112 at T. 7, 12). Lazo was to receive 10% of the value of the cargo in exchange for following the truck and picking up co-conspirator

Perez after unloading the cargo and abandoning the truck. (Cr-DE#
112 at T. 20).

Lazo testified that Perez picked Lazo and Fernandez up in the
morning in a white Highlander truck. They drove to a warehouse in
Hollywood. (Cr-DE# 112 at T. 8). Two other co-conspirators who Lazo
did not know had arrived separately in a Jaguar. Perez put on
gloves, took out a gun, got out of the Highlander and approached
the truck. (Cr-DE# 112 at T. 8). Lazo stated he could not see
whether anyone from the Jaguar also got into the truck. Lazo
claimed there had been no prior discussion regarding a gun and did
not know Perez was armed until he pulled out the gun. He stated he
was not happy about the gun but could not do anything about it
because they were already at the scene of the planned robbery. (Cr-
DE# 112 at T. 8). Lazo explained he got out of the Highlander when
Perez exited and got into the front passenger seat and that
Fernandez moved to the driver's seat that Perez had occupied. (Cr-
DE# 112 at T. 16). Lazo testified that he and Fernandez followed
the truck to a warehouse where the contents were unloaded, then
lost the truck and went home rather than following it and picking
up Perez as planned. (Cr-DE# 112 at T. 10-11). He did not mention
that the truck made any stops on the way to the warehouse.

The victim truck driver testified he was completing paperwork
in the cab of his truck outside a perfume warehouse in Hollywood
when a Hispanic male approached his passenger side and asked the
building's address. He rolled down his window and provided the
information from some paperwork. As he put his papers away, the man
entered the passenger side door and pulled out a gun. The man
forced the victim into the rear of the cab where his eleven year
old son was asleep and held them at gunpoint while another man
entered the truck and drove it away. After driving for a block or

two, the truck stopped and a third individual entered. He told the victim's son to cover his eyes and duct taped a paper plate over the victim's eyes. (Cr-DE# 112 at T. 31). After approximately fifteen minutes, the truck stopped and the cargo was off-loaded for ten to fifteen minutes. (Cr-DE# 112 at T. 32). The men abandoned the truck with the victim and his son still inside in a residential neighborhood. (Cr-DE# 112 at T. 33).

Police showed the victim a photo lineup from which he tentatively identified a subject. (Cr-DE# 112 at T. 35). At the hearing, the victim stated Lazo looked like the man with the gloves and gun, but was not 100% sure. (Cr-DE# 112 at T. 35). The victim recalled only one person exiting the Highlander and did not see anyone get out to switch seats.

FBI Agent Lisa Lamey testified she interviewed cooperating co-conspirator Perez about the events surrounding the offense. Perez stated Rivas was the mastermind behind the operation. Perez admitted he rented the Highlander and agreed to help Rivas rob the tractor-trailer and kidnap its driver. (Cr-DE# 112 at T. 42). Perez and Rivas did not want to physically carry out the robbery so Rivas approached Fernandez about conducting the robbery and finding another person to help. He and Lazo agreed to participate. (Cr-DE# 112 at T. 43). According to Perez, Lazo had brought gloves and a gun with him for the purpose of robbing the truck. (Cr-DE# 112 at T. 44). Lazo entered the truck first then Vales joined him in the driver's seat. They informed the others an additional person was needed because the driver's son was also in the truck. They stopped and Fernandez entered the truck. Rivas and Perez followed in the Jaguar and Highlander, respectively. (Cr-DE# 112 at T. 46). Lamey testified she had viewed a video surveillance camera at the warehouse where the cargo was off-loaded. One individual exited the

Highlander whose physical description matched Perez and who Lamey believed to be Perez. (Cr-DE# 112 at T. 55).

Cellular phone records indicated Rivas was in contact with Vales and Fernandez was in contact with Lazo, which is consistent with the information provided by Perez. (Cr-DE# 112 at T. 48). There were no calls between Fernandez and Lazo during the time period when Perez's version of events placed both of them in the truck. (Cr-DE# 112 at T. 50). The phones' GPS movement is also consistent with the truck's general movement as reported by Perez. (Cr-DE# 112 at T. 48-50).

Lamey explained co-conspirator Vales provided roughly the same story as Perez. (Cr-DE# 112 at T. 52). Vales stated he did not see a firearm during the offense but that Lazo had admitted while both men were in prison that he had brought a .38 caliber firearm and used it during the robbery. (Cr-DE# 112 at T. 56).

At the end of the sentencing hearing, counsel argued Lazo was credible and Perez's version of events was self-serving and minimized his own role in the offense:

> MR COHEN: ... I look at one man, Perez, who has everything to lose with an extensive record. I look at my client, okay, who is a security guard, has no prior record, okay, and who ruined a promising baseball career in getting involved in this thing. And it just doesn't make sense. Plain and simple.
>
> We were not there, but we know Perez has a lot to lose. My client got up – and I've asked him many times, and from the beginning his story has been consistent with me in attorney-client conversation that I've had with the

man straight through to his testimony today, straight
through to the point I told him you would be facing a
much more severe sentence if the judge doesn't believe
you.

Judge, it doesn't make sense that he would testify
this way knowing that he would lose points for acceptance
of responsibility. He already pled guilty....

(Cr-DE# 112 at T. 65).

Lazo asked the Court for leniency due to his minor role, lack
of a criminal history, and prospect of a successful baseball
career. (DE# 112 at T. 66).

At the close of the testimony, the Court found Lazo was not
credible, that the use of a firearm was foreseeable even under
Lazo's version of events, and that his role was not minor:

THE COURT: ... I'm going to deny the request of the
defendant for a minor role and also for removal of the
enhancement related to the firearm.

First, in terms of the firearm, it's apparent even
from the defendant's testimony that he was aware of the
firearm ... at the time he claims the defendant --
codefendant Perez got ready to get out of the car to
approach the truck. He knew they were going to commit a
robbery of the truck and that there was a driver inside
of the truck. And so I find it entirely foreseeable that
a firearm would be used. The defendant chose to continue
his role in the crime and so I -- at a minimum I find the
firearm is foreseeable. And, likewise, that minor role is
not appropriate in view of his admitted involvement in
this robbery.

Further, I -- while I agree with counsel that Perez has every reason to minimize his involvement, I don't find Mr. Lazo's testimony credible as to the events with respect to the firearm. I do believe that the testimony about switching seats at the time the Highlander came up alongside the truck is not credible. The idea that you would wait and then have that type of musical chairs where all three people jumped out and moved, changed seats is -- seems unlikely.

Second, Mr. Lazo, his testimony doesn't account for the subsequent stop of the truck once the son was discovered so that a third person could reenter the truck.

Finally, the agent has testified as to Mr. Perez's statements. That's obviously hearsay. Mr. Perez has a reason to be untruthful. But it's notable that Mr. Perez's statements seem to be consistent with those of the victim and his testimony at trial in terms of the events. The victim can't make a positive identification, but he certainly can [sic] exclude Mr. Lazo from being the person who had the firearm. So for all of those reasons I believe in all likelihood Mr. Lazo had the firearm.

I can't say for sure that that's the case. I haven't had a chance to see Perez and assess his credibility, but I believe that to be the case.

(Cr-DE# 112 at T. 58-59).

Despite the Court's finding Lazo was not credible, it nevertheless deducted three points for accepting responsibility. Given the Court's findings, the guideline range was 97-121 months. The Court found a guidelines sentence to be reasonable and imposed

a sentence at the top of the guidelines of 121 months imprisonment followed by three years of supervised release, restitution of $1,611.27, and a $100 assessment. (Cr-DE# 84, 90, 112 at T. 69-70).

On direct appeal, Lazo argued the government breached the plea agreement by opposing a sentence reduction for acceptance of responsibility, and by failing to recommend a sentence at the bottom of the guidelines. See 2008 WL 2199188. The Eleventh Circuit affirmed on August 8, 2008, for the following reasons:

> The agreement at issue provided that the government would recommend a reduction for acceptance of responsibility for Lazo, but expressly conditioned this obligation on Lazo not making any 'false statements or misrepresentations to any governmental entity or official' after entering into the plea agreement. In light of this condition, Lazo's testimony at his sentencing hearing, which was inconsistent with that of the victim and the surveillance tapes, and which the district court found not to be credible, released the government from its obligations to recommend both an acceptance-of-responsibility adjustment and a low-end sentence....
>
> Moreover, even if the government's change of position regarding an adjustment for acceptance of responsibility did constitute a breach of the plea agreement, Lazo has not shown plain error – the standard applicable here because Lazo did not voice any objection below to the government's alleged breach of the plea agreement.... First, the government's argument against a reduction for acceptance of responsibility did not have a prejudicial effect on Lazo, as the district court

granted the reduction, despite the government's argument against it. Second, the district court acknowledged the government's recommendation of a low-end sentence, and the government's failure actually to voice such a recommendation was not prejudicial to Lazo. Because neither of the government's alleged breaches affected Lazo's substantial rights, there was no plain error....

United States v. Lazo, 286 Fed. Appx. 725, 726 (11th Cir. 2008).

Lazo filed the instant motion to vacate on October 8, 2009. (Civ-DE# 1).

## 4. Statute of Limitations

The government does not contest the timeliness of Lazo's motion to vacate.

## 5. Procedural Default

The government argues Claim (4) is procedurally defaulted because Lazo failed to raise it on direct appeal.

As a general matter, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding. Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989). To avoid application of the procedural default rule, a defendant must show (1) cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error, or (2) actual innocence. Bousely v. United States, 523 U.S. 614, 622 (1998); Murray v. Carrier, 477 U.S. 478, 496 (1986).

In the instant case, Lazo did not raise on direct appeal the grounds he presently asserts in Claim (4), that is, that the

12

sentencing Court erred by: (a) sentencing Lazo to the top of the guidelines range where the plea agreement stipulated to sentencing at the bottom of the guidelines range, and (b) participating in the plea negotiations and/or execution of the plea agreement.

In his reply, Lazo appears to argue the cause and prejudice exception excuses his procedural default. He argues counsel's ineffectiveness is sufficient "cause" to excuse his failure to raise the issue on appeal. He has not attempted to demonstrate prejudice.

Ineffective assistance of counsel can constitute cause to excuse a procedural default if it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Murray, 477 U.S. at 488. Counsel was not ineffective for failing to raise the sentencing issue he presently raises in Claim (4)(a) on direct appeal because Lazo waived the right to appeal a guidelines sentence as part of his plea agreement. The failure to appeal was due to Lazo's voluntary waiver rather than counsel's ineffectiveness, therefore, Lazo cannot demonstrate "cause" for failure to raise this claim on direct appeal. See generally Lynn v. United States, 365 F.3d 1225 (11th Cir. 2004) (defendant failed to establish cause where his own escape from custody prevented him from raising claims on direct appeal); see, e.g., Ware v. United States, 2009 WL 2567023 (S.D. Fla. May 14, 2009) (defendant's appellate waiver did not constitute cause to excuse procedural default).

Lazo has also failed to demonstrate counsel was ineffective for failing to raise Claim (4)(b) on direct appeal because it is meritless for the reasons set forth in the discussion section that follows. Diaz v. Sec'y, Dept. of Corr., 402 F.3d 1136, 1144-45

(11th Cir. 2005) (appellate counsel is not ineffective for failing to raise nonmeritorious claims on appeal); <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001) (same).

Lazo has not alleged the actual innocence exception applies and this exception, and would be inconsistent with his voluntary guilty plea.

As Lazo has failed to demonstrate cause and prejudice, he cannot avoid application of procedural default and he is not entitled to review of Claim (4). Nevertheless, even if Claim (4) was not procedurally defaulted it would fail on the merits for the reasons set forth in the discussion section below.

## 6. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a); <u>see</u> <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979); <u>Hill</u>, 368 U.S. at 428.

A defendant who pleads guilty "waives all non-jurisdictional challenges to the constitutionality of the conviction" and may only attack the knowing and voluntary nature of the plea. <u>See</u> <u>Wilson v.</u> <u>United States</u>, 962 F.2d 996 (11th Cir. 1992). A defendant's declarations during the plea colloquy carry "a strong presumption

of verity" and cannot be overcome by conclusory or unsupported allegations. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

Although the sentencing process may be reviewed on a Section 2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. <u>Kett v. United States</u>, 722 F.2d 687, 690 (11th Cir. 1984).

To prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 668; <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000).

Where guilty pleas or the equivalent were entered, application of the second prong of the two-prong <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). In the context of sentencing, a defendant is required to prove that, if counsel had not performed deficiently, the result of his sentencing proceeding would have been different. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001); <u>Forrester v. United States</u>, 349 Fed. Appx. 528 (11th Cir. 2009).

<u>7. Discussion</u>

(1)  <u>Ineffective Assistance: Enhancement</u>

(A)  Lazo contends the outcome of the proceeding would have been different had counsel objected to the six-level firearm

enhancement, which resulted in application of the "plain error" standard on direct appeal which he could not satisfy.

To the extent Lazo suggests trial counsel was ineffective for failing to object to the firearm enhancement, this claim is refuted by the record. The firearm enhancement issue was specifically reserved in the plea agreement and counsel notified the Court of the issue at the plea hearing. Counsel also filed written objections to the PSI arguing the firearm enhancement does not apply. Counsel vigorously opposed inclusion of the firearm enhancement at the sentencing hearing and called Lazo to testify that he neither possessed nor knew any of the co-conspirators had possessed, a firearm during the offense. At the end of the sentencing hearing, counsel renewed all objections. (Cr-DE# 112 at T. 71). Therefore, Lazo's argument counsel was ineffective for failing to object to the firearm enhancement is refuted by the record and cannot support relief.

Lazo's claim is also factually inaccurate insofar as he suggests he raised the firearm enhancement issue on appeal. His appellate brief affirmatively waives any claim regarding firearm enhancement. See 2008 WL 2199188 ("Although the defense had originally raised objections to the four point enhancement sought by the probation office for brandishing a gun, in the presentence investigation report, and for a minor role reduction, this appeal is based upon solely the issue of whether the Government breached it's plea agreement by failing to recommend that the Defendant be sentence at the bottom of his guideline range."). He fails to explain why appellate counsel was deficient for waiving the issue. The evidence at the sentencing hearing, including Lazo's own testimony, was sufficient to support a finding that Lazo either personally possessed and brandished a firearm, or that it was

foreseeable that a co-conspirator would do so. See Claim (2), infra. Counsel cannot be deemed deficient for failing to raise a meritless argument on appeal. See, e.g., Broadwater v. United States, 347 Fed. Appx. 516 (11th Cir. 2009); Philmore v. McNeil, 575 F.3d 1251 (11th Cir. 2009). He also fails to demonstrate prejudice. He appears to concede the firearm issue would not have satisfied the plain error standard of review. If the alleged error is not "plain error," it cannot satisfy Strickland's prejudice prong. See Gordon v. United States, 518 F.3d 1291, 1298 (11th Cir. 2008) ("It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden by articulating it as a claim of ineffective assistance."). Accordingly, Lazo has failed to satisfy Strickland and this claim should be denied.

(B) Lazo contends counsel neglected to inform before he entered his plea that a firearm enhancement is applicable, even if the defendant did not himself possess a weapon, where a co-conspirator possessed a firearm pursuant to Pinkerton v. United States, 328 U.S. 640 (1946). He claims he did not know that it is unnecessary for the co-conspirator be charged in the same indictment for the co-conspirator's possession of a firearm to apply.

This claim is refuted by the record. First, the guilty plea specifies Lazo is reserving the right to argue "the use of a firearm during the commission of the offense was not foreseeable." (Cr-DE# 65 at ¶ 12); see also (Cr-DE# 111 at T. 15). Second, Lazo testified at the sentencing hearing that he should not be held responsible for a firearm because Perez's possession of the firearm was not foreseeable. Notably, he testified that Perez pulled out a gun and gloves as he existed the Highlander and before approaching

17

the truck. Lazo explained he did not know Perez planned to use a gun, was not happy about it, but that it was too late to do anything about it at that point because they were already at the location of the robbery. Lazo explained he continued with his role in the offense by following behind the truck as it went to a warehouse for unloading. The plea agreement and Lazo's testimony reveal that he knew foreseeability of Perez's gun possession was at issue and could result in a firearm enhancement to his own sentence.

Moreover, this claim is insufficient to support relief because Lazo does not allege he would have rejected the plea offer and proceeded to trial but for counsel's misadvice. He does not challenge the voluntariness of the plea or attempt to withdraw his plea. Instead, asks only that his sentence be reduced to the bottom of the adjusted guideline range. (CIV-DE# 1). His claim fails to allege prejudice and is therefore insufficient to support relief. See Hill, 474 U.S. at 52 (defendant must show there is a reasonable probability he would have gone to trial but for counsel's error).

(2)   Ineffective Assistance: Sufficiency of the Evidence
Lazo argues counsel failed to challenge an enhancement for brandishing a firearm where there was insufficient evidence that Lazo either brandished a firearm or foresaw that a co-defendant would brandish a firearm.

To attribute a person's possession of a weapon to the defendant: "first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms

18

possession." <u>United States v. Otero</u>, 890 F.2d 366, 367 (11th Cir. 1989). The Eleventh Circuit later held the first <u>Otero</u> factor is dicta, and that the rationale behind the factor is satisfied "if the possessor of the firearm is a co-conspirator of the defendant whose sentence is enhanced." <u>United States v. Luiz</u>, 102 F.3d 466, 469 (11th Cir. 1996). A six-level enhancement applies if a firearm was "otherwise used" during a robbery. U.S.S.G. § 2B3.1(b)(2)(B). "Otherwise used" means "the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1. The government must prove by the preponderance of the evidence that a co-conspirator's acts are reasonably foreseeable. <u>United States v. Gallo</u>, 195 F.3d 1278 (11th Cir. 1999).

The victim testified an armed man entered his truck, forced him into the back cab of the truck with his son, and held both of them at gunpoint while the truck was driven to another location and its cargo unloaded. The victim thought Lazo could be the gunman but could not make a 100% identification. Further, Lazo admitted in his testimony that he participated in the conspiracy but argued a co-conspirator, Perez, was the gunman. He admitted he saw the gun before Perez approached the truck. The Court concluded Lazo's testimony was not credible, and that he was likely the gunman. However, the Court noted that the evidence was sufficient to support the firearm enhancement even under Lazo's own testimony because he saw a co-conspirator with a gun prior to the offense and nevertheless continued his participation.

The Court did not err in applying the enhancement because the evidence satisfied the three <u>Otero</u> prongs. The first prong is satisfied because it is undisputed that both candidates for possessing the firearm, Lazo and Perez, were members of the

conspiracy. The second prong is satisfied because the gunman, whether Lazo or Perez, used the firearm in furtherance of the conspiracy. That is, he threatened the truck driver and son with the gun to subdue them while the truck was driven to another location and the cargo off-loaded. This use of the firearm facilitated the offense and qualifies as "otherwise using" a firearm. See United States v. Cover, 199 F.3d 1270 (11th Cir. 2000) (bank robbery co-conspirator's use of a firearm to carjack and abduct a motorist during flight is sufficient to constitute "otherwise use" of his firearm). Finally, it is undisputed that both Lazo and Perez were members of the conspiracy at the time the firearm was used.

Based on the foregoing, the evidence was more than sufficient for the Court to apply a six-level enhancement to Lazo through either his own or his co-conspirator's use of a firearm during the robbery.

(3)  <u>Ineffective Assistance: Guidelines Sentence</u>

(A)  Lazo argues counsel failed to adequately argue for a sentence at the low end of the guidelines under the plea agreement. This claim cannot support relief. The Court accepted Lazo's guilty plea and was aware of its contents, including the parties' recommendation that Lazo receive a sentence at the bottom of the guidelines. (Cr-DE# 111 at T. 6, Cr-DE# 112 at T. 2). By the time of sentencing, a PSI had been completed and the Court had heard testimony from three witnesses including Lazo. Counsel and the defendant requested leniency based on his role in the offense, lack of a firearm, lack of a criminal record and promising baseball career. (Cr-DE# 112 at T. 65-67). Based on the evidence, the Court found a sentence at the top of the guidelines was appropriate. Lazo fails to explain how further argument by counsel requesting a

sentence at the bottom of the guidelines would have probably caused the Court to impose a lesser sentence. Indeed, the Eleventh Circuit found the Government's failure to voice a recommendation that Lazo receive a sentence at the bottom of the guidelines was not plain error; Lazo has failed to explain why the same argument from counsel would have obtained a different result. See Gordon, 518 F.3d at 1298.

(B)  Lazo argues counsel failed to object to preserve the low end of the guidelines issue for appeal. Assuming for the sake of argument that counsel was deficient, Lazo cannot demonstrate prejudice because appellate counsel did raise the guidelines issue on direct appeal. Appellate counsel argued the Government had breached the plea agreement by failing to make a bottom of the guidelines recommendation. The Eleventh Circuit found the Government's failure to voice a bottom of the guidelines recommendation was not prejudicial and did not constitute plain error because the District Court had noted that recommendation and nevertheless imposed a sentence at the top of the guidelines. As the issue failed to satisfy the plain error standard of review, it likewise fails to satisfy Strickland's prejudice prong. See Gordon, 518 F.3d at 1298 ("It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden by articulating it as a claim of ineffective assistance.").

(C)  Finally, Lazo claims counsel failed to warn him that testifying at the sentencing hearing may result in a sentence greater than the bottom of the guidelines. This claim cannot support relief. Lazo understood the plea agreement's recommendation that he receive a sentence at the bottom of the guidelines was a non-binding recommendation and that the Court could impose any

21

sentence within the guidelines. The Government's factual proffer was that Lazo was the gunman in the truck hijacking. Lazo disputed this proffer and reserved the right to contest sentencing enhancement for his use of a firearm, which he did by testifying at the sentencing hearing. (Cr-DE# 112 at T. 3-4). Counsel warned Lazo he "would be facing a much more severe sentence if the judge doesn't believe" his testimony at the sentencing hearing because deductions for acceptance of responsibility could be lost. (Cr-DE# 112 at T. 65). Lazo nevertheless decided to testify and explained that Perez was the gunman. The Court found Lazo was not credible, applied the firearm enhancement, and found his role was not minor. Under the circumstances, the Court found a sentence at the top of the guidelines was appropriate. Lazo fails to explain why the Court would have concluded otherwise and imposed a sentence at the bottom of the guidelines had he not testified, and based its sentence solely on the Government's proffer.

Lazo has failed to demonstrate counsel's alleged errors prejudiced him, accordingly, his claims are insufficient to support relief.

(4) <u>Trial Court Error</u>

(A) Lazo contends the Court erred by sentencing him to the top of the guidelines range where the plea agreement stipulated to sentencing at the bottom of the guidelines range. The Court did not err by imposing a sentence which it found to be appropriate under the circumstances, and which is within the guidelines as contemplated by the plea agreement. The Court was not bound by the plea agreement's recommendation and properly exercised its discretion to impose a sentence at the top of the guidelines based on the evidence. <u>See</u> Fed. R. Crim. P. 11(e)(1)(B); (Cr-DE# 65 at ¶ 13-14) (plea agreement acknowledging the court was not bound by the

sentencing recommendation); (Cr-DE# 111 at T. 8) (plea colloquy acknowledging the defendant will have no right to appeal the sentence unless it exceeds the statutory maximum or is an upward departure from the guidelines). No legal error or breach of the plea agreement occurred.

(B) Lazo's suggestion the Court somehow rendered his plea involuntary through its involvement in the plea negotiation process is contrary to Lazo's present assertion that his plea was freely and voluntarily entered and should be enforced. It is also entirely unsupported by the record, which indicates the Court's only participation was to engage Lazo in the requisite colloquy before accepting Lazo's guilty plea. See generally (Cr-DE# 111). His claim is unpersuasive, inconsistent with the record, contrary to his position in the case, and should be denied.

Based on the foregoing, it is recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 13th day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Yasmani Lazo, pro se
     Reg. # 72883-004
     FCC - Coleman (Medium)
     Federal Correctional Complex
     Inmate Mail/Parcels
     PO Box 1032
     Coleman, FL 33521

     Robin Waugh-Farretta

23

```
United States Attorney's Office
500 E Broward Blvd.
7th Floor
Fort Lauderdale, FL 33301-3002

Ann Ruth Schultz
United States Attorney's Office
99 NE 4 St.
Miami, FL 33132
```